IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. CV-99-324-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

Pending before the Court are Defendant's Motion for Summary Judgment on Remaining Title and Liability Issues (Categories 2 & 3 and Categories 10, 12, & 13) (Docket No. 184) and Plaintiffs' Cross Motion for Summary Judgment on the Adverse Possession and Category 2 and 3 Liability Issues (Docket No. 193).

For the reasons that follow, Defendant's Motion for Summary Judgment will be denied and Plaintiffs' Cross Motion for Summary Judgment will be granted consistent with this opinion.

## BACKGROUND

Plaintiffs filed this action alleging that they own land that abuts or is traversed by a railroad right-of-way and claiming an ownership interest in the right-of-way which constituted part of a railroad corridor operated by the Pacific and Idaho Northern Railroad Company and its successors (the "Railroad"). The corridor is approximately 83 miles long extending between

Weiser and New Meadows, Idaho.  It is currently being used as a recreational trail (the "Weiser Trail") by order of the Interstate Commerce Commission ("ICC") under the provisions of the National Trails System Act, 16 U.S.C. § 1241, *et seq.*, (the "Rails-to-Trails Act").  Plaintiffs allege that conversion of their property from a railroad corridor to a recreational trial constituted a taking for which they are entitled to just compensation under the Fifth Amendment.

The Court previously examined the documents that conveyed various forms of property interests to the Railroad.  In order to determine the nature of the property interest acquired by the Railroad or retained by the original grantors, the Court categorized the conveyances according to the language in the instruments under which the Railroad obtained its rights to use the corridor. There was no documentation for some of the parcels comprising the rights-of-way.  For these parcels, the Railroad noted on its July 16, 1913 filing with the Interstate Commerce Commission Division of Valuation that they were held by adverse possession.  *See* Joint Appendix, June 1, 2001, Tab 19 (Docket No. 18).

The Court ruled in favor of Defendant as to Categories 1, 5, 6, 7, 8, 9, 10, 12, 13, 14, and 15 finding that the Railroad acquired fee title to the subject parcels.  Plaintiffs thereafter appealed those portions of the Court's decision pertaining to Categories 1, 5, 6, 8, 14, and 15 to the Federal Circuit Court of Appeals which reversed in part, vacated in part, and remanded for further proceedings.  *See Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005) (Docket No. 116).

Following remand, this Court found that the deeds in Categories 5, 6, and 8 conveyed fee title to the Railroad (*Mem. Dec. and Order*, p. 17 (Docket No. 169)); that the Court was not precluded by the law of the case or the rule of mandate from taking evidence on the issues of

adverse possession and prescriptive easement (*Id.*, p. 30); that the Category 2 and 3 deeds conveyed an easement to the Railroad (*Mem. Dec. and Order*, pp. 9; 17 (Docket No. 176)); and that the Federal Circuit, after finding that the Railroad held only an easement, had determined liability with respect to the Category 1 lands leaving only the issue of compensation to be determined (*Id.*).

Remaining issues to be addressed by the Court are:  (1) whether the Railroad met the requirements for adverse possession under Idaho law for certain portions of the right-of-way along with the related issue of whether the Railroad acquired fee simple title to any portions that it adversely possessed, and (2) whether Defendant is liable for a taking of the Plaintiffs' interest in those portions of the right-of-way conveyed by the Category 2 and 3 deeds.  Because the Court has already determined that the Category 2 and 3 deeds conveyed an easement to the Railroad, the issue becomes whether the uses authorized by the Trails Act are permissible uses of the railroad easements.

In opposing Defendant's summary judgment motion and bringing its cross motion, Plaintiffs contend that the Railroad has failed to establish that it adversely possessed any interest greater than a prescriptive easement.  Further, Plaintiffs contend that conversion of the railway easements to recreational trail use constituted an abandonment of the original easement resulting in a taking for which Plaintiffs are entitled to compensation.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Rule 56, which provides in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007).

A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.,* at 250. "When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id.,* at 254. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

Here, the parties each submitted proposed findings of fact, an examination of which reveals no genuine issue but rather disagreements as to interpretation or to relevance.

## STATEMENT OF FACTS

The parties are quite familiar with, and do not dispute, the general background facts surrounding the formation of the railroad right-of-way at issue in this case that was formerly known as the New Meadows Branch. Therefore, the Court does not find it necessary to list

them here.  There is a minor dispute as to the number of parcels in each of the categories at

issue.[1]  However, the Court finds that the discrepancies do not constitute a genuine issue of

material fact that would preclude summary judgment.  The number of parcels in each category

is irrelevant to determination of the issue of whether the Railroad acquired by adverse

possession the parcels for which no documentation exists.  Likewise, the parties are also in

basic agreement concerning the method of taxation of railroad property in general and the

Railroad and its predecessors in particular, the operating statements the Railroad filed with the

State of Idaho in connection with the tax assessment, and the Railroad's payment of the

assessed taxes to Adams and Washington Counties for the period of 1987 through 1993.

With regard to the Category 2 and 3 deeds, there is no dispute as to the wording of the

Category 2 deeds to Parcel Nos. 66, 94, 106, 159, 161, 163 and the Category 3 deeds to Parcel

Nos. 158 and 164.  For reference, however, the pertinent language from those deeds is

contained in Appendix A attached hereto.

The Court finds that the following additional material facts are not in dispute:

1.      On March 17, 1995, the Railroad filed a petition with the ICC seeking an
        exemption under 49 U.S.C. § 10505 from the prior approval requirements
        of 49 U.S.C. § 10903-04 to "discontinue service over and abandon" the
        subject right of way due to reductions in carload traffic and serious
        financial losses;

2.      On November 1, 1995, the ICC granted the Railroad's petition subject to
        conditions;

3.      On December 28, 1995, the ICC issued a NITU;

4.      On June 17, 1997, the Railroad reached a Trails Act agreement with

---

[1]  Defendant's position on the number of parcels within Categories 10, 12, and 13 appears to be based on the figures listed in the Conveyance Categories Agreed to by the Parties (Docket No. 93).  Plaintiffs' position appears to be based on the RR Schedule filed with the Interstate Commerce Commission (Docket No. 18, Ex. 16).

Friends of the Weiser River Trail ("trail manager") while retaining a right
of re-entry to restore rail service pursuant to the terms of the Trails Act
and the NITU;

5.      Prior to 1997, the right of way had been used for railroad
purposes including over the years transport or passengers, timber,
mining, livestock, and agricultural products.

6.      Since 1997, the Weiser River Trail has been open to recreational
use by hikers, bikers, and equestrians for a variety of activities
and is supported by certain amenities such as picnic tables,
latrines, and kiosks.

Plaintiffs submitted several other proposed facts pertaining to the impact on the adjacent

property owners of the present uses of the right-of-way versus the impact of the previous

railroad use.  However, the Court does not deem it necessary to detail any of those facts to the

extent they are undisputed.  To the extent that any of those facts are disputed, the Court finds

that the disputes are not as to material facts that would preclude summary judgment.

## DISCUSSION

### Adverse Possession  (Categories 10, 12, and 13)

**A.**      **Procedural Background**

The Federal Circuit found that the stipulation of the parties to treat the Category 10, 12,

and 13 properties for purposes of litigation as having been acquired by adverse possession "was

not a concession that the requirements of adverse possession had been met."  *Hash*, 403 F.3d at

1321.  Accordingly, it reversed this Court's judgment that the Railroad acquired fee title to the

underlying lands in Categories 10, 12, and 13.  This Court then determined that neither the law

of the case nor the rule of mandate precluded it from taking evidence on the issues of adverse

possession.  *Mem. Dec. and Order*, p. 30 (Docket No. 169).

Defendant now contends, based on the documentary evidence submitted with its

summary judgment motion, that the Railroad, through its occupancy, use, and payment of taxes on the subject rights-of-way, satisfied the statutory requirements for acquiring fee simple title by adverse possession.  Plaintiffs counter that all of the elements for adverse possession have not been met and, at most, the Railroad acquired a prescriptive easement.  Both sides acknowledge that there is no Idaho case directly on point on the question of whether the Railroad acquired fee title or an easement under the facts presented here.

Prior to reaching the adverse possession issues, the Court will discuss the backdrop against which the issues should be considered.  Then the Court will review the cases from other jurisdictions cited by the Federal Circuit before determining whether Idaho would follow that authority or whether Idaho law dictates a different result.

### B.    Railroad Jurisprudence

Many courts have observed that railroads are treated differently in certain contexts than other corporations and individuals.  However, the Supreme Court of Michigan's observation was particularly well stated:

> The United States [S]upreme [C]ourt has observed: "Railroads are a peculiar species of property, and railroad corporations are in some respects peculiar corporations."  *Union Pac. R. Co. v. United States (Central Pacific R. Co. v. Gallatin), (Sinking Fund Cases),* 99 U.S. 700, 722, 25 L.Ed. 496.

> The principles enumerated in the various cases, and our statutory and constitutional provisions, may be best considered by having in mind such distinct difference between railroad corporations and other corporations and persons.

*Michigan Cent. R. Co. v. Garfield Petroleum Corp.*, 290 N.W. 833, 834 (Mich. 1940).

Likewise, the Wisconsin Supreme Court, quoting from *Michigan Central*, noted distinctions between individuals and railroads specifically with respect to adverse possession:

> "railroad corporations are, in a marked degree, to be treated
> differently from other persons and corporations in regard to the
> acquisition of land by adverse possession.  Property of individuals
> taken by railroad corporations for the purpose of constructing
> their roads is, in legal contemplation, taken not for private use but
> for a public use, and the tenure of railroads in lands condemned
> for such a purpose is in the nature of a trust for public use, subject
> to the supervision of the government."

*Pollnow v. State Dept. of Natural Resources*, 276 N.W.2d 738, 742 (Wis.  1979) (quoting

*Michigan Central Railroad Company v. Garfield Petroleum Corp.*, 292 Mich. 373, 290 N.W.

833, 127 A.L.R. 507 (1940).[2]

Apparently in recognition of the differences between railroad corporations and other

individuals or corporations, statutes were passed specifically enumerating a railroad

corporation's powers separate and apart from the statutory provisions governing general

business corporations.  In Idaho, railroad corporations are authorized, among other things:

> 2.  To receive, hold, take and convey, by deed or otherwise, as a
> natural person, such voluntary grants and donations of real estate
> and other property which may be made to it to aid and encourage
> the construction, maintenance and accommodation of such
> railroad.
>
> 3.  To purchase, or by voluntary grants and donations to receive,
> take possession of, hold, and use all such real estate and other
> property as may be necessary for the construction and
> maintenance of such railroad, and for all stations, depots and
> other purposes necessary to successfully work and conduct the
> business of the road.

Idaho Code § 62-104.  As noted by Defendant, this provision has been in effect since 1887,

when Idaho was still a territory of the United States.  *See* Def. Ex. 3 (Revised Statutes of Idaho

---

[2] *Michigan Central* recognized that railroads could acquire titles and interests in lands by adverse possession and *absolute fee by grant* and that "innumerable" cases grappled with the issue of the extent of the interest acquired by adverse possession.  *Id.* at 833 (emphasis added).

**Memorandum Decision and Order - 8**

Territory, 14th Sess., Tit. IV, Ch. II, § 2666 (1887)).

Similarly, railroad easements differ from common law easements in that railroads must have exclusive use and occupancy of its right-of-way easements in order to operate. *See Abbott v. Nampa School District No. 131*, 808 P.2d 1289, 1294 (Idaho 1991); *State of Idaho v. Oregon Short Line R.R.*, 617 F. Supp. 207, 210 (D. Idaho 1985) (citing *State of Wyoming v. Udall*, 379 F.2d 635 (10th Cir. 1967) and 65 Am. Jur. 2d, § 73 at p. 385 (1972)).

Finally, railroad property is even treated differently for taxing purposes than property of most other corporations. All *real* property[3] in Idaho is assessed by the assessor of the county in which it is located. Idaho Code § 63-207(1). On the other hand, *operating* property,[4] which includes land over which the railroad operates, is assessed by the Idaho State Tax Commission. Idaho Code §§ 63-207(2) and 63-401. It is the duty of the railroad owner or operator, as opposed to the landowner, to prepare an annual statement showing all property, including land, subject to assessment. Idaho Code § 63-404.

Based on these statutes, it appears that tax on operating property is imposed on a railroad regardless of whether it owns the land over which the railroad has been constructed or

---

[3]  Real property consists of lands, possessory rights to land, ditch and water rights, and mining claims, both lode and placer; that which is affixed to land; and that which is appurtenant to land. Idaho Code § 55-101.

[4]  Operating property is defined in relevant part as:

> all rights-of-way accompanied by title; roadbeds; tracks; pipelines; bargelines; equipment and docks; terminals; rolling stock; equipment; power stations; power sites; lands; reservoirs, generating plants, transmission lines, distribution lines and substations; and all immovable or movable property operated in connection with any public utility, railroad or private railcar fleet, wholly or partly within this state, and necessary to the maintenance and operation of such road or line, or in conducting its business, and shall include all title and interest in such property, as owner, lessee or otherwise. . . .

Idaho Code § 63-201(11).

**Memorandum Decision and Order - 9**

merely has an easement over that land.  Also, the operating tax is not based on the gross amount of land the railroad owns or has an easement over.  Rather, it is based on the length of the track throughout the state.  *See* Idaho Code § 63-405.

### C.        General Principles of Adverse Possession

Idaho law regarding adverse possession absent a written instrument is set forth in two separate statutory provisions:

> Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely.

Idaho Code § 5-209.  In relevant part, the following statute is applicable as well:

> For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:
>
> (1) Where it has been protected by a substantial enclosure.
>
> (2) Where it has been usually cultivated or improved.
>
> Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five (5) years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law. . . .  Provided further, that for purposes of establishing adverse possession pursuant to this section, a person claiming adverse possession must present clear and convincing evidence that the requirements of subsection (1) or (2) of this section have been met.

Idaho Code § 5-210.[5]

However, in Idaho, in addition to the statutory requirements of Idaho Code § 5-210,
there are certain non-statutory requirements for prevailing on a claim of adverse possession: the
possession must have been "actual, open, visible, notorious, continuous and hostile to the party
against whom the claim is made." *Luce v. Marble*, 127 P.3d 167, 175 (Idaho 2005). The party
seeking title by adverse possession has the burden of proving all the requisite elements by clear
and satisfactory or clear and convincing evidence. *Id.* (all statutory and non-statutory elements
must be proven by "clear and satisfactory evidence"); *Utter v. Gibbins*, 48 P.3d 1250, 1254
(Idaho 2002) (clear and satisfactory); *East Lizard Butte Water Corp. v. Howell*, 837 P.2d 805
(Idaho 1992) (clear and convincing);  *Berg v. Fairman*, 690 P.2d 896, 898 (Idaho 1984) (clear
and satisfactory).

Adverse possession is distinguished from prescriptive easement in that "[t]he essential
element for acquiring . . . a prescriptive right is *use* of the privilege without actual possession of
the land . . . .  Prescription and adverse possession are established in a similar manner . . . .
[P]rescription is the actual, open, notorious, hostile, continuous and exclusive '*use*' of [the] land
[of another]." *Oakley Valley Stone, Inc. v. Alastra*, 715 P.2d 935, 938 (Idaho 1985) (emphasis
added.) The Court will discuss prescriptive easements in more detail later in this opinion.

Adding to the fact that adverse possession is a somewhat confusing area of the law is the
fact that the terms "adverse possession," "prescription," "prescriptive right," and the like do not
appear to be used with any precision and sometimes appear to be used interchangeably in
various cases purporting to address the issue.  Furthermore, some cases will quiet title based on

---

[5] The statute was amended effective July 1, 2006 to change the statutory period from 5 to 20 years. *See*
Idaho Session Laws 2006, ch. 158 § 5.

adverse possession and others will find the elements of adverse possession have been met but find that the interest obtained by adverse possession is less than fee title. Nevertheless, an appropriate starting point for the Court's analysis would be to first determine if the Railroad acquired title to the property by adverse possession since a prescriptive easement is sometimes considered in effect "a 'lesser included' cause of action of adverse possession." *See Hughes v. Fisher*, 129 P.3d 1223, 1233 (Idaho 2006). Where a party cannot satisfy the elements of adverse possession, it can frequently satisfy the elements of prescriptive easements.

### E.    Disputed Elements of Adverse Possession

Defendant contends that the Railroad has met all the statutory and non-statutory requirements for adverse possession. It is undisputed that the Railroad occupied and continuously used the right-of-way from 1911 to 1995, well beyond the statutory requirement for adverse possession. The only areas of dispute are whether payment of operating taxes equates with payment of taxes on the land required by Idaho Code § 5-210 and whether the Railroad's possession was hostile.[6]

### 1.    Taxes

Defendant has chosen the period from 1987 through 1993 upon which to base its claim of adverse possession due to the relative ease with which information, records, and documentation could be obtained. It has provided evidence of paying taxes for that time period which exceeds the 5-year statutory period for adverse possession. However, Plaintiffs contend that the taxes paid by the Railroad are not taxes on the "land" pursuant to Idaho Code § 5-210.

---

[6] Defendant argues that because Plaintiffs have admitted that the elements of prescriptive easement have been met, they are admitting that the use was hostile which equates to satisfaction of the hostile element in the adverse possession context.

**Memorandum Decision and Order - 12**

Rather they are taxes on the operating property of the railroads.

Although no Idaho court has directly addressed this issue, Illinois, which has similar railroad tax and adverse possession statutes, has done so and concluded that payment of an operating tax can satisfy the tax element of adverse possession. *See, e.g., St. Louis, Indianapolis & Eastern R.R. Co. v. Warfel*, 45 N.E. 169 (Ill. 1896) (finding that plaintiff's payment of taxes on the entire parcel through which the railroad ran did not defeat the railroad's claim of adverse possession where railroad had paid tax assessed against railroad track because "as to its assessment and taxation, and payment of taxes, [the strip of land] was separated and removed from the quarter section of land of which it was a part."); *Chicago, Milwaukee & St. Paul Ry. Co.*, 47 N.E. 750 (Ill. 1897) (finding that land held by railroad for right-of-way is taxed as railroad track and any payment of taxes by landowner did not defeat railroad's claim to adverse possession based on payment of the railroad tax).

These cases have held essentially that the state-assessed railroad tax defeats a locally assessed tax on the entire parcel through which the right-of-way passes, thereby entitling the railroad to adverse possession upon payment of taxes for the statutory period. However, in each of those cases, the railroad was claiming title under an instrument of conveyance which distinguishes it from the instant case.

While not directly addressing the issues raised in the Illinois cases, the Idaho Supreme Court apparently assumed that payment of the taxes assessed based on mileage of a railroad track for the statutory period could support a claim of adverse possession. *See O'Brien v Best*, 194 P.2d 608, 614 (Idaho 1948). There, it was undisputed that the railroad had paid taxes and adversely used what was referred to as Parcel 2 as a right-of-way after realignment of its tracks from the originally granted right-of-way. The court determined that taxes assessed on a mileage

basis on operating property by the State Tax Commission and paid by the railway not only resulted in adverse possession of Parcel 2 but also defeated appellant's claim of adverse possession on Parcel 1(the parcel on which the originally granted right-of-way existed) given the lack of proof of abandonment of Parcel 1 by the railroad.  *Id.*

While the Court recognizes that payment of operating taxes for the statutory period may satisfy the tax requirement of Idaho Code § 5-210 in some circumstances, as discussed below, it is not persuaded that the cited cases dictate a finding that the Railroad here acquired fee title.

### 2.    Hostile Possession

Even if payment of operating taxes satisfied the tax requirement for adverse possession, Defendant still has the burden of proving that the Railroad's possession of the rights-of-way was hostile to the rights of Plaintiffs.  *See Luce*, 127 P.3d at 175 (possession must have been "actual, visible, notorious, continuous and hostile to the party against whom the claim is made"); *see also Oakley Valley Stone*, 715 P.2d at 938 (adverse possession is the "actual, open, notorious, hostile, continuous, and exclusive possession of another's land").  In other words, Defendant has the burden of showing that possession was hostile and without the permission of the owner.  *East Lizard Butte*, 837 P.2d at 807-09; *Berg*, 690 P.2d at 898.  Occupation without hostile intent (i.e., with the owner's permission) does not constitute adverse possession.  *Berg*, 690 P.2d at 898.  Continuous occupation of property for five years generally raises the presumption that the possession has been adverse and under a claim of right.  *Hodgins v. Sales*, 76 P.3d 969, 976 (Idaho 2003); *East Lizard Butte*, 837 P.2d at 807-08.  However, this presumption only applies where the easement is over "wild and unenclosed lands."  *Hodgins*, 76 P.3d at 976 (citing *Cox v. Cox*, 373 P.2d 929, 934 (Idaho 1962).  In that case, the presumption is that the use of the lands is permissive.  *Id.* (citing *Marshall v. Blair*, 946 P.2d 975, 980 (Idaho

1997).[7]  However, where no record existed to show whether the railroad had acquired a right-of-way through public or private grant, the court found that "in the absence of evidence to the contrary, taking possession of a right of way and building and operating a transcontinental railroad over it support a legitimate inference of the acquisition of a valid right of way. . . ." *Oregon Short Line R.R. Co. v. City of Caldwell*, 226 P. 175, 176 (Idaho 1924).

Defendant has offered no evidence that the Railroad's occupancy was not permissive. Rather, it relies on the *East Lizard Butte* presumption and offers several theories as to why the use was likely not permissive: (1) that the "general anecdotal accounts" of the Railroad's expansion does not constitute admissible evidence on the issue of whether a particular landowner gave permission for the Railroad to enter their land, build a rail line, and occupy the right-of-way corridor in perpetuity; (2) that in the case of lands still in public ownership, permission from the United States was documented in the Railroad's filings with the General Land Office; (3) that the Railroad obtained documentation where permission had been granted either in the form of a quitclaim or a warranty deed conveying either fee title or an easement; (4) that the lack of documentation "strongly suggests" inability to secure permission; and (5) that the fact that the Railroad possessed condemnation authority does not imply permissive occupancy.

In the absence of documentation, resolution of whether approximately 100 years ago any individual landowner gave the Railroad permission for establishment of a right-of-way across his land necessarily depends on presumptions, inferences, and even speculation.  While on the

---

[7]  The Court notes that several of Plaintiffs' proposed facts refer to the land through which the right-of-way passes is rural, mountainous, and sparsely populated timber areas, canyons, farmlands, and ranch lands, indicating that a presumption of permissive use might be in order.

**Memorandum Decision and Order - 15**

one hand contending that general anecdotal historical accounts are not admissible evidence to prove the Railroad's expansion into Idaho was generally welcome, Defendant on the other hand asks the Court to infer that lack of documentation evidences an inability to secure permission from those landowners.  Other equally reasonable inferences are that documentation had been obtained but lost or destroyed.  Indeed, it has been observed that railroads sometimes lost their original granting documents through fire and floods, or through courthouse fires.  *Pipes,Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-first Centuries*, 27 Ecology L.Q. 315, 379 (2000).[8]  In such cases, when compiling their valuation charts, the railroad denoted the parcels "as acquired by adverse possession."  *Id.*  Similarly here, the Railroad denoted on its valuation chart the subject parcels as being held by adverse possession.  *See* Joint Appendix, June 1, 2001, Tab 19 (Docket No. 18).  Where the Railroad had documentation evidencing a conveyance, such was noted.  *Id. passim*.  Where the Railroad acquired a right-of-way through condemnation, such was noted.  *Id*., Tab 19, p. 8 of 9.  Is it not then just as likely, if not more so, that if a landowner had not granted permission that the Railroad would have commenced condemnation proceedings?  Looking at it that way, the lack of a condemnation notation on the valuation chart could imply that permission had not been denied.

The Court need not resolve the issue of whether the presumption of *East Lizard Butte* or the presumption of *Oregon Short Line* applies because, even if possession is deemed to be hostile, the Court finds that the Railroad acquired a prescriptive easement rather than fee title based on the weight of authority discussed below.

---

[8]  Interestingly, there is a notation on the Railroad's valuation chart that a large portion of its records were destroyed by fire in October, 1911.  *See* Joint Appendix, June 1, 2001, Tab 19, p. 9 (Docket No. 18).

**Memorandum Decision and Order - 16**

### E.      Interest Acquired

Defendant contends that because it has met all the statutory and non-statutory requirements for adverse possession, it has acquired fee simple title to the right of way. Plaintiffs, on the other hand, contend that at most the Railroad acquired a prescriptive easement. In fact, they agree that the elements of a prescriptive easement have been met.

### 1.      Fee Simple

At the outset, the Court would question whether the Railroad met the statutory requirements of Idaho Code § 5-209 which provides that land is deemed to have been held adversely where "there has been an actual continued occupation of land, *under a claim of title*, exclusive of any other right . . . ."  (Emphasis added.)  Given that it appears to be irrelevant for any purpose whether a railroad owns a right-of-way in fee or holds an easement, paying operating taxes or running the railroad through the right-of-way hardly seems to constitute a claim of title.

Defendant relies on two Idaho cases in support of its position that it received a fee simple interest by adverse possession.  In the first, *Oregon Short Line R.R. Co. v. City of Caldwell*, 226 P. 175 (Idaho 1924), the railroad alleged that the city was trespassing on its right-of-way by excavating, filling, and building embankments, and the city contended that the work was being done on a public street.  The Idaho Supreme Court found that the railroad had acquired and started using the right-of-way and was in open and notorious possession of it at least two years before the street dedication under which the city was claiming rights even though the railroad did not obtain a deed until eight years after the dedication.

Defendant here relies on *Oregon Short Line* to demonstrate that the construction and operation of an 83-mile railroad satisfies the substantial improvement requirement for adverse

possession.  The specific language relied upon is :

> [t]here can be no more effective means of giving actual notice of a
> claim to a right of way than the building and operation of a
> railroad over it . . . . [I]n the absence of evidence to the contrary,
> taking possession of a right of way and building and
> operating a transcontinental railroad over it support a legitimate inference of
> the acquisition of a valid right of way, although the right did not
> ripen into a conveyance until some time thereafter.

*Id.* at 176.  Be that as it may, the court was not construing the adverse possession statute.

Indeed, the railroad was not claiming adverse possession.  Rather, it was merely claiming that

its right to possession predated that of the city's claim to possession.  Whether the railroad had

obtained fee simple title or an easement was irrelevant to the issue of whether the railroad had a

prior right to possession.  The case stands only for the proposition that building and operating a

railroad supports an inference that the railroad had legally acquired the right of way absent

evidence to the contrary.  Contrary to Defendant's position that *Oregon Short Line* supports the

conclusion that a railroad can acquire fee title to land, in reality, it merely supports the

conclusion that a railroad can take a conveyance of land for a right of way.

The second case, *O'Brien v Best*, 194 P.2d 608 (Idaho 1948), involved two competing

resort owners and an intervening railroad.  Respondent resort owner sued to enjoin appellant

resort owner from posting a sign on land leased from the intervenor railroad directing travelers

to appellant's place of business.  The property consisted of two parcels, Parcel 2 being the

parcel relevant to this discussion.  The railroad had realigned its line onto Parcel 2 at some point

after receiving a federal land grant for the right-of-way.  The court quieted title in the railroad,

in part in reliance on its payment of taxes, which, in effect, entitled respondent to an injunction

and damages.  Although the court quieted title in the railroad, the issue of whether the railroad

acquired an easement rather than fee title had not been raised.  Rather, the court stated only that

the railroad "ha[d] concededly paid taxes, and adversely used, since the realignment of its tracks . . . ." Therefore, the Court does not consider *O'Brien* dispositive.[9]

The Railroad lacks the additional factor of an instrument of conveyance present in *Oregon Short Line* and *O'Brien*. Furthermore, those cases did not consider the fact that a railroad pays a tax on its operating property regardless of whether it owns the right-of-way in fee or possesses an easement over the land.

The Court finds the following language to be particularly illustrative of the necessary considerations for determining the nature of the acquired interest:

> If there is no color of title, and only use and possession of the property, the right acquired depends on the extent and character of the use and possession. If the sole use is as a right of way, whether as a footpath, wagon road, or railroad, the user will ripen into an easement, and *it is only where there is some additional type of user or other action which will give notice that the claim is to more than a right of way* that the use and permission may ripen into a fee title. *See* 127 A.L.R. 517, 518-520.

*People v. Ocean Shore R.R.*, 196 P.2d 570, 577 (Cal. 1948) (emphasis added).

Here, there is simply no indication that the Railroad used the right-of-way as anything other than to operate its railway. There was no "additional user or other action" that gave notice that it was claiming more interest in the land than that of a right-of-way. Therefore, the Court finds that the Railroad did not take fee simple title through adverse possession and will turn to a discussion of prescriptive easement.

---

[9]  The Court recognizes that it previously relied on *Oregon Short Line* and *O'Brien* in its initial decision appealed by the parties. *Mem. Dec. and Order* (Docket No. 88). However, because the Court at the time considered that the parties were stipulating that the elements of adverse possession had been met, there had not been a need to fully analyze and address the requisite elements.

**Memorandum Decision and Order - 19**

2.      **Prescriptive Easements**

a.      **Case Law from Other Jurisdictions**

In reversing this Court's decision on the adverse possession issue, the Federal Circuit noted, as dicta, that the great weight of authority from other jurisdictions is that adverse occupancy of a railroad right-of-way does not confer any greater interest in the land than that of a right-of-way easement. *Hash*, 403 F.3d at 1322 (citations omitted). The Federal Circuit opined that this position was consistent with Idaho's rule that any acquired prescriptive right is limited by the purpose for which it was acquired and the use to which it was put during the prescriptive period. *Id.* (citing *Idaho Forest Indus., Inc. v. Hayden Lake Watershed Improvement Dist.*, 733 P.2d 733, 736 (Idaho 1987)). The Court will first discuss the cases cited from other jurisdictions and then discuss whether Idaho would adhere to the general rule followed in those other jurisdictions or whether Idaho law dictates a different result.

In *Maryland & Pennsylvania R.R. Co. v. Mercantile-Safe Deposit & Trust Co.*, 166 A.2d 247 (Md. App. 1960), the court was guided by the cases compiled at Annotation, *Nature and Extent of Interest by Railroad in Right of Way by Adverse Possession or Prescription*, 127 A.L.R. 518, in adopting the view that a railroad, without documentary evidence of title, acquired an easement rather than fee simple title. *Maryland & Pennsylvania*, 166 A.2d at 248-49 ("The weight of authority . . . compels us to hold that all the defendant acquired by its long use of the land in question was a right of way easement."). One of the cases informing its decision was *Ocean Shore*, a California case cited above, from which it quoted the following language:

> Railroads, like individuals, may acquire fee title by adverse possession. . . . The general rule, however, is that a railroad which enters without color of title and uses a right of way

> ordinarily gains merely a prescriptive right to an easement and
> does not acquire title to the fee.

*Maryland & Pennsylvania*, 166 A.2d at 249 (quoting *Ocean Shore*, 196 P.2d at 576).  In

adopting the general rule, the court noted that the reason for the general rule is "that the nature

of the user by the railroad requires no more than an easement in the right of way and does not,

therefore, amount to an occupancy adverse to the claim of another to the fee."  *Id.*

In *Pollnow v. State Dept. of Natural Resources*, 276 N.W.2d 738 (Wis. 1979), the

railroad had abandoned the railway line running through the subject property and conveyed it to

the State of Wisconsin by quitclaim deed.  The State purchased the property for use as a hiking

and biking trail in the summer and a snowmobile trail in the winter.  Wisconsin had an adverse

possession statute similar to Idaho's and, like Idaho, placed no limitations on a railroad's ability

to acquire title.  The court also noted, again like Idaho, that the adverse possession statute

carried over the common law definition of adverse possession and therefore to be adverse, the

possession must be "open, notorious, hostile and continuous."  *Id.* at 741 (citing *Northwoods*

*Development Corp. v. Klement*, 24 Wis. 2d 387, 129 N.W.2d 121 (1964)).

In *Pollnow*, the railroad had run daily trains from 1887 to 1973 and constructed and

maintained a five-wire fence on either side of the center of the tracks.  The court observed

"there is no argument in this case that the railroad's occupation was insufficient to constitute

adverse possession.  Rather, the question is what is the nature of the interest that the railroad

acquired."  *Id.* at 741-42.  The court, as did the court in *Maryland & Pennsylvania*, relying on

the cases cited at 127 A.L.R. 517, followed the majority rule that "a railroad company acquires

by prescription or adverse possession only an easement in a right of way."  *Id.* at 742.  This

view was adopted in the cited cases based either of two theories: that the railroad cannot acquire

an interest broader than its use of the occupied land, or that an easement is analogous to the interest acquired by condemnation. *Id.*

The *Pollonow* court was unpersuaded by the State of Wisconsin's argument, similar to Defendant's argument here, that it took fee title by adverse possession because railroads were not statutorily precluded from taking fee title. Rather, it analogized to the Wisconsin condemnation statute that limited the railroad's use to railroad purposes and limited the duration of the railroad's interest to the time the right of way is used for railroad purposes and concluded that the railroad had only acquired an easement by adverse possession. *Id.* at 743.

Next, in *Wheeling Stamping Co. v. Warwood Land Co.*, 412 S.E.2d 253, 255 (W. Va. 1991), the Supreme Court of Appeals of West Virginia had no trouble finding that in the absence of documentary evidence of title, the railroad acquired only a prescriptive easement. *Id.* at 255 (citing *Maryland & Pennsylvania R.R. Co.* and finding the weight of authority "impels" that result).

Finally, in *Strother v. Bootheel Rail Properties, Inc.*, 66 S.W.3d 751 (Mo. Ct. App. 2001), the railroad contended that it had acquired fee simple title to the railroad right of way through adverse possession because it had not acquired the property by condemnation, voluntary grant, or conveyance in fee. Relying on *Wheeling Stamping* and *Pollnow*, among several other cases, the court rejected that argument and held that

> [w]ithout a recorded document protecting [the railroad's] interests . . . we are left to conclude that the railroad acquired a right of way easement by prescription. (Citation omitted.) Although akin to acquisition of title to real estate by adverse possession, "a prescriptive easement is defined solely by its use during the prescriptive period." (Citation omitted.) "[I]t is not necessary for one to intend to violate the owner's rights. It is sufficient that one uses land without regard to any right of the owner to prohibit the use." (Citation omitted.) It is established by "use which is shown

> to have been continuous, uninterrupted, visible, and adverse for a period of ten years." (Citation omitted.) "A prescriptive right, where there is no color of title, cannot be any broader than the claim which the user evidences. . . ." (Citation omitted.)

*Strother*, 66 S.W.3d at 754.

It is apparent from the cases cited by the Federal Circuit that the great weight of authority favors taking no more of a landowner's property interests than necessary in the absence of documentation evidencing an intent to convey fee title. We now turn to Idaho case law.

### b.     Idaho Case Law

There is no Idaho case law precisely on point, but as the Federal Circuit noted, it is "'the long established rule' in Idaho 'that any right gained by prescription is confined to the right as exercised during the prescriptive period' and '[i]t is limited by the purpose for which it is acquired and the use to which it is put.'" *Hash*, 403 F.3d at 1322 (citing *Idaho Forest Industries, Inc. v. Hayden Lake Watershed Improvement District*, 733 P.2d 733, 736 (Idaho 1987) (finding where appellant continuously used an easement for roadway purposes on the top of a dike, the proposed expansion to include public beaches, docks and parking area was clearly outside the scope of the easement).

As stated above, the Idaho Supreme Court has explained that "[t]he essential element for acquiring . . . a prescriptive right is use of the privilege without actual possession of the land. . . . Prescription and adverse possession are established in a similar manner. . . . [P]rescription is the actual, open, notorious, hostile, continuous and exclusive 'use' of [the] land [of another]." *Oakley Valley Stone*, 715 P.2d at 938. Reducing the difference to its essence, the court stated that "[t]he most basic distinction between the two doctrines is the distinction between

'possession' and 'use.'" *Id.*

Defendant argues that because there is no such thing as an exclusive use prescriptive easement, the Railroad must have acquired fee simple title. *See Luce,* 127 P.3d at 176 (an exclusive easement by prescription does not exist in our law); *Oakley Stone*, 715 P.2d at 938 (use and occupation that more closely resembled complete dominion and possession was inconsistent with a prescriptive right). However, exclusive use and occupancy are inherent characteristics of railroad easements. As Plaintiffs have noted, many jurisdictions that have found that railroads acquire prescriptive easements have also acknowledged that railroad easements are exclusive in nature.[10]

As noted above, adherents of the general rule that railroads acquire a prescriptive easement rather than fee title to a right-of-way based their opinion in part on the fact that, in the

---

[10] **California**: *City of San Gabriel v. Pacific E.R. Co*., 18 P.2d 996, 998 (Cal. Ct. App. 1933) (recognizing the exclusive use of a railroad easement) (citing cases). *Compare People v. Ocean Shore R.R. Inc.*, 196 P.2d 570, 577 (Cal. 1948) ("a railroad which enters without color of title and uses a right-of-way ordinarily gains merely a prescriptive right to an easement and does not acquire title to the fee"). **Georgia**: *Tompkins v. Atlantic C.L.R. Co*., 96 S.E.2d 603, 605 (Ga. 1957) (holding that "a railroad right of way is more than a mere right of passage . . . that it is . . . 'special and exclusive in its nature'") (citing *W. Union Tel. Co. v. Pa. R. Co*., 25 S. Ct. 133, 141 (1904)). *Compare Watkins v. Hartwell R.R. Co*., 597, S.E.2d 377, 379 (Ga. 2004) (where a "[r]ailroad satisfie[s] the requirements of adverse possession," it "thereby gain[s] a right-of-way by prescription"). **Indiana**: *Chicago, S.L. & P.R. Co. v. Burger*, 24 N.E. 981, 982 (Ind. 1890) (stating that where a railroad company has "only an easement" in its right of way, "the railroad company has the exclusive right of possession, so that the owner of the fee has no right

to enter"). *Compare Consumers' Gas Trust Co. v. Am. Plate Glass Co*., 68 N.E. 1020, 1021 (Ind. 1903) (where a railroad "enters without title and constructs its [right of way] . . . nothing more than an easement is acquired"). **Maryland**: *Chevy Chase Land Co. v. U.S*., 733 A.2d 1055, 1078 (Md. 1999) (holding that "an easement held by a railroad tends to exclude the use of the easement by the owner of the servient tenement"). *Compare Md. & Pa. R.R. Co. v. Mercantile-Safe Deposit & Trust Co*., 166 A.2d 247, 248-49 (Md. 1960) ("all that the [railroad] acquired by its long use of the land in question is a right-of-way easement"). **Missouri:** *Missouri-Kansas-Texas R.R. Co. v. Freer*, 321 S.W.2d 731, 737 (Mo. Ct. App. 1959) (noting that "the holder of a railway right of way easement can . . . exclude the owner of the servient tenement"). *Compare Strother v. Bootheel Rail Props., Inc*., 66 S.W.3d 751, 754 (Mo.Ct.App. 2001) (the "weight of authority" favors adverse possession of only an easement). **Wisconsin**: *Christensen v. Mann*, 204 N.W. 499, 508 (Wis. 1925) (stating that where a railroad acquires an right of way by easement, "the nature of their business, their obligations to the community and the public safety, require that their possession of the land so taken should be absolute and exclusive") (citing *Conn. & P. R.R. Co. v. Holton*, 32 Vt. 43 (Vt. 1859)). *Compare Pollnow v. State Department of Natural Resources*, 276 N.W.2d 738, 742 (Wis. 1979) ("The majority rule is that a railroad company acquires by prescription or adverse possession only an easement in a right-of-way.").

**Memorandum Decision and Order - 24**

majority of states, railroads seeking to acquire a right-of-way through condemnation acquired only an easement as opposed to fee title.  Idaho's eminent domain statute similarly would appear to limit a railroad to an easement upon condemnation.  *See* Idaho Code § 7-702(1) (permitting fee simple title only when private land is "taken for public buildings or grounds, or for permanent buildings, for reservoirs and dams and permanent flooding occasioned thereby, or for an outlet for a flow, or a place for the deposit of debris or tailings of a mine").  *Compare* Idaho Code § 7-702(2) (allowing only an easement when land is taken "for any other use").

Based on the above, the Court adopts the general rule that the Railroad acquired a prescriptive easement rather than fee simple title through its continuous use of the right-of-way. Accordingly, the only issue to be determined is whether recreational trail use and railbanking exceed the scope of the easement. This issue will be discussed in connection with the Category 2 and 3 deeds.

### B.      Taking (Category 2 and 3)

As stated above, the Court previously found that the Category 2 and 3 deeds conveyed easements rather than fee simple title to the Railroad.  Likewise, the Federal Circuit determined with regard to Category 1 that the Railroad acquired a railway easement from the United States prior to the Homestead Act rather than fee simple title.  The Federal Circuit then concluded that, "[o]n the railway's abandonment of its right-of-way these [Category 1] owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the *Preseault* cases."  *Hash*, 403 F.3d at 1318.  The court remanded with the directive that "the district court shall determine just compensation on the conditions that apply to these landowners."  *Id*.  At least three courts have applied that holding and determined that as to the

**Memorandum Decision and Order - 25**

property owners who took title subject to 1875 Act railway easements, conversion of the right-of-way to a recreational trail constituted a taking for which the landowners were entitled to compensation.

In the first of these cases, the Federal Court of Claims rejected the government's argument that *Hash* dictated that further proceedings in accordance with *Preseault* were required to resolve the issue of whether railbanking and interim trail use purposes fell within the scope of the easements.  The Federal Court of Claims rejected the argument that the nature and scope of the easement and of plaintiff's property interest were still to be decided stating, "As the excerpt block-quoted above makes clear, that is exactly what the Federal Circuit decided . . . ." *Blendu v. United States*, 75 Fed. Cl. 543, 547 (2007).  The court further explained that the argument was  "contrary to the plain language of the Federal Circuit's holding. . . .  The Federal Circuit's decision is not framed in terms of a contingency . . . , but is phrased instead in terms of an existing condition.  The Federal Circuit held that, by allowing railbanking, defendant had in fact abandoned its easement and thereby forfeited its proprietary interests." *Id*. at 548 (citing *Hash*, 403 F.3d at 1318).[11]

Next, another Federal Court of Claims case with a similar fact pattern rejected arguments that the takings issue was still to be determined and that the Federal Circuit's language in *Hash* was somehow ambiguous.  *See Ellamae Phillips Co. v. United States*, 77 Fed.Cl. 387, 393-94 (2007) (noting this Court's decision on remand and the *Bentlu* court's decision both of which found the language of the mandate clear and binding).[12]

---

[11]  It should be noted that the Federal Court of Claims is bound by published decisions of the Federal Circuit.  *Blendu v. United States*, 75 Fed. Cl. 543, 549 (2007).

[12]  It is interesting to note that the parties in *Ellamae Phillips* had not initially considered *Hash II* dispositive on the liability issue.  However, the court noted that "shortly after we held oral argument, the Parties

**Memorandum Decision and Order - 26**

Finally, and perhaps more importantly because it was not bound by the Federal Circuit's precedent in *Hash II*, the District Court for the District of Nebraska rejected the defendant's arguments that the easements were broad enough to encompass railbanking and interim trail use and found that the landowners were entitled to compensation for a taking. *See Schneider v. United States*, 2008 WL 160921 (D. Neb. January 15, 2008) (noting that "[w]hether or not the Court is bound to follow the Federal Circuit's decision in *Hash II*, the Court finds the decision is certainly highly persuasive.").

The Court sees no difference between the railway easement subject to which Category 1 owners took their land and the easements for railway purposes granted to the Railroads by the Category 2 and 3 owners.[13]   To treat the easements differently would result in inconsistent results along the same right-of-way whereby Plaintiffs who owned land subject to the 1875 Act easements would be entitled to compensation whereas Plaintiffs who owned land subject to easements granted to the Railroad would not. In both instances, the easements were granted for railway purposes.

Furthermore, the Federal Circuit has already determined that recreational trail use is a

---

brought to the Court's attention two lower court decisions in which the final paragraph of *Hash II*'s discussion of Category 1 was treated as binding precedent on the issue of liability.  *Hash II* then took on an entirely new and decisive role in our case, a significance that belied the Parties' earlier dismissive treatment of the case."  *See Ellamae Phillips Co. v. United States*, 77 Fed.Cl. 387, 392-93 (2007).

[13]   The Court previously determined that all of the Category 2 and 3 deeds conveyed property to the Railroad for railroad purposes.  *Mem. Dec. and Order*, at 8-11 (Docket No. 88).  Although the Court initially found that the deeds conveyed a fee simple determinable or a fee simple conveyance with a possibility of reverter upon cessation of railroad use, it subsequently reconsidered its decision in light of *Neider v. Shaw*, 65 P.3d 525 (Idaho 2003) and concluded that the deeds conveyed an easement for railroad purposes.  *Mem. Dec. and Order*, at 10-17 (Docket No. 176).  Whether granting a fee simple determinable interest or an easement, the fact remains that the Court has decided that the interests conveyed in both the Category 2 and 3 deeds were for railroad purposes.  The Court will not revisit that determination by addressing whether right-of-way and station purposes means the same thing as railroad purposes.

**Memorandum Decision and Order - 27**

completely different use from a railroad right-of-way use:

> When the easements here were granted to the Preseaults' predecessors in title at the turn of the century, specifically for transportation of goods and persons via railroad, could it be said that the parties contemplated that a century later the easements would be used for recreational hiking and biking trails, or that it was necessary to so construe them in order to give the grantee railroad that for which it bargained? We think not. Although a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different. In the one case, the grantee is a commercial enterprise using the easement in its business, the transport of goods and people for compensation. In the other, the easement belongs to the public, and is open for use for recreational purposes, which happens to involve people engaged in exercise or recreation on foot or on bicycles. It is difficult to imagine that either party to the original transfers had anything remotely in mind that would resemble a public recreational trail.
>
> Furthermore, there are differences in the degree and nature of the burden imposed on the servient estate. It is one thing to have occasional railroad trains crossing one's land. Noisy though they may be, they are limited in location, in number, and in frequency of occurrence. Particularly is this so on a relatively remote spur. When used for public recreational purposes, however, in a region that is environmentally attractive, the burden imposed by the use of the easement is at the whim of many individuals, and, as the record attests, has been impossible to contain in numbers or to keep strictly within the parameters of the easement. . . .
>
> Most state courts that have been faced with the question of whether conversion to a nature trail falls within the scope of an original railroad easement have held that it does not.

*Preseault v. United States* 100 F.3d 1525, 1542-43 (Fed. Cir. 1996) (rejecting "shifting public use" doctrine).  It had occasion to revisit the issue again some years later and reached the same decision:

> And it appears beyond cavil that use of these easements for a recreational trail-for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway-is not the

same use made by a railroad, involving tracks, depots, and the
running of trains.  The different uses create different burdens.  In
the one case there was an occasional train passing through (no
depots or turntables or other appurtenances are involved on these
rights of way).  In the other, individuals or groups use the
property, some passing along the trail, others pausing to engage in
activities for short or long periods of time.  In the one case, the
landowner could make such uses of the property as were not
inconsistent with the railroad's use, crossing over the tracks,
putting a fruit stand on one edge of the property, or whatever.  In
the other, the government fenced the trail in such a way as to deny
that access.

Some might think it better to have people strolling on one's
property than to have a freight train rumbling through. But that is
not the point.  The landowner's grant authorized one set of uses,
not the other.

*Toews v. United States*, 376 F.3d 1371, 1376-77 (Fed. Cir. 2004) (rejecting application of

California's shifting public use doctrine stating "a public transportation easement defined as one

for railroad purposes is not stretchable into an easement for a recreational trial and linear park

for skateboarders and picnickers, however desirable such uses may be for these linear strips of

land.").  The Federal Circuit also found that references to railbanking and possible future use of

the easements for a light rail system did not change the analysis:

There is a reality test in takings law.  It is clear from the record
that for the foreseeable future these lands will be used for the
recreational trail project.  Whether there ever will be a light rail
system or other railroad service over these paved routes in Clovis
is a matter of speculation about the distant future, based on
uncertain economic and social change, and a change in
government policy by managers not yet known or perhaps even
born.  Such speculation does not provide a basis for denying
protection to existing property rights under the Constitution.  In
the circumstances, it is unnecessary for us definitively to address
the question of whether there had been an earlier abandonment of
the easement, a point we need not decide to uphold the judgment
below.

**Memorandum Decision and Order - 29**

*Id.* at 1381.

The Court does not find it necessary to go into an extensive discussion of whether the result would be the same under Idaho law given the Federal Circuit's decision regarding the Category 1 landowners.  Suffice it to say, the Court believes that Idaho case law would dictate the same result: that interim trail use and railbanking exceed the scope of the easements granted by the original landowners.  *See Christensen v. City of Pocatello*, 124 P.3d 1008 (Idaho 2005) (general easement serving property could not be put to recreational use); *Mountainview Landowners Cooperative Ass'n v. Cool*, 86 P.3d 484 (Idaho 2004) (easement for swimming and boating purposes did not include "[p]icnics and gatherings for relaxation and social interaction"); *Villager Condo. Ass'n v. Idaho Power Co.*, 829 P.2d 1335 (Idaho 1992) (increases in use but not changes in use are allowed where an easement is granted for a limited purpose); *Abbott v. Nampa School District No. 131*, 808 P.2d 1289 (Idaho 1991) (easement granted to irrigation district cannot be used for non-irrigation purposes).

## CONCLUSION

The Railroad acquired a prescriptive easement in the segments of the right-of-way for which there was no documentation evidencing the type of interest conveyed.  Interim trail use and railbanking exceeded the scope of the easements granted for railway purposes by the Category 2 and 3 deeds.  Just as the Category 1 landowners' property interests were taken for public use entitling them to just compensation, so also were the Category 2, 3, 10, 12, and 13 landowners' property interests taken for public use entitling them to just compensation.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 184) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiffs' Cross Motion for Summary Judgment (Docket No. 193) is GRANTED.

IT IS FURTHER HEREBY ORDERED that the parties shall submit a proposed case management schedule for determining just compensation owing to the Category 1, 2, 3, 10, 12, and 13 landowners within sixty (60) days from the date of this Order.

DATED: March 24, 2008

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge

# APPENDIX A

# CATEGORY 2 AND 3 DEEDS

The <u>Category 2</u> deeds read in material part as follows (with misspellings corrected):

(a) **Parcel Number 66, New England Mortgage Security Company**:

> This conveyance is made upon the express condition that the property herein conveyed is to be used for the maintenance and operation of a railroad, and if the said premises shall cease, at any time, to be used for railroad purposes and no line of railroad shall be maintained over and across the same, then and in such event the said property herein granted shall revert to the grantor, its successors or assigns: And upon the further condition that the said party of the first part its successors and assigns, shall be entitled to have and use one wagon crossing
> at the grade of the said railroad, at such place on said premises as the party of the first part shall select . . .
>
> And upon the further condition that the said party of the second part, shall construct and maintain a suitable fence upon both sides of its track, along the boundary line of the premises herein conveyed.

(b) **Parcel Number 94**, **New England Mortgage Security Company**:

> This conveyance is made upon the express condition that the property herein conveyed is to be used for the maintenance and operation of a railroad, and if the said premises shall cease, at any time to be used for railroad purposes, and no line of railroad shall be maintained over and across the same[,] then in and in such event the said property herein granted shall   revert to the grantor[,] its successor and assigns;
>
> And upon the further conditions that the said party of the first part, it[s] successors or assigns shall be entitled to have and use one wagon crossing at the grade of the said railroad, at such place on said premises as the party of the first part shall select . . .
>
> And upon the further condition that the said party of the second part, shall construct and maintain a suitable fence upon both sides of its track along the boundary line of the premises, herein conveyed.

(c) **Parcel Number 106, New England Mortgage Security Company**:

This conveyance is made upon the express condition that the property herein conveyed is to be used for the maintenance and operation of a railroad, and if the said premises shall cease at any time to be used for railroad purposes and no line of railroad shall be maintained over or across the same then and in such event the said property herein granted shall revert to the grantor its successors or assigns;

And upon the further condition that the said party of the first part, its successors or assigns shall be entitled to have and use one wagon crossing at the grade of the said railroad, at such place on said premises as the party of the first part shall select . . .

And upon the further condition that the said party of the second part shall construct and maintain a suitable fence on both sides of its track, along the boundary line of the premises herein conveyed.

(d) **Parcel Numbers 159, 161, 163, Butterfield Livestock Company, Ltd.**:

Right of Way Deed

. . . . do grant, bargain, sell, convey and confirm unto [Railroad] . . . forever, all the following described real estate . . . to wit:

A right of way one hundred feet in width for party of the second part's standard guage steam railroad . . . over, through, and across the following described lands . . . [coordinates]

Said right of way containing the aggregate right of way of 21.70 acres.

Also, all the following described lands and premises for station purposes, to wit:
[coordinates] that lies East of the above described right of way owned by [grantors]

****

TO HAVE AND TO HOLD, . . . for right of way and station purposes . . . .
PROVIDED, NEVERTHELESS, . . . upon the express condition . . . that the [Railroad] shall maintain and operate for the use of the [grantor], its successors and assigns, and the public generally, a flag station, or depot, and a livestock loading station, with the necessary load chutes, corrals et cetera, at the place or places now designated, or used by [the Railroad] . . .

on its said railway line . . .; And in case the [Railroad] shall neglect or fail to operate said [line] as a railroad, or shall fail to maintain, or operate, a flag station, or depot, or a livestock loading station, or the necessary chutes, corrals et cetera, continuously, then and in that event, this conveyance shall be void and the grant herein made shall cease and determine and the property herein conveyed shall revert to the [grantor], its successors and assigns. Def.'s Exs. 15-18, Doc. 184-6, filed Jul. 12, 2007.)

The Category 3 deed of 1911, from Payette Lumber and Manufacturing Co. to the Railroad, which conveyed Parcels 158 and 164, reads in material part as follows:

TO HAVE AND TO HOLD . . . forever, so long as [the Railroad or its successors] shall use said property for right of way purposes, and in the event that said property shall cease to be used for right of way purposes, it shall then, and thereupon and thereby revert to said grantor herein, its successors and assigns.